IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE BEJARAN,<br><br>       Plaintiff,<br><br>  vs.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS REHAB., et al.,<br><br>       Defendants.<br>_____ | No. CIV. S-08-00817 DAE |

ORDER DISMISSING COMPLAINT IN PART
PURSUANT TO 28 U.S.C. § 1915

On April 14, 2008, pro se Plaintiff Jesse E. Bejaran, Jr., a prisoner incarcerated at California State Prison, located in Corcoran, California, filed a prisoner civil rights complaint and an application to proceed in forma pauperis. (Doc. ## 1 & 2.) The Court granted the in forma pauperis application on January 8, 2009. (Doc. # 6.) In his complaint, Bejaran alleges that employees of the Deuel Vocational Institute in Tracy, California ("DVI Tracy") were deliberately indifferent to his serious medical needs. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983. Although some allegations state cognizable claims, several claims are deficient and, therefore, are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1), with leave granted to amend.

## BACKGROUND

In his most recent amended complaint, Plaintiff brings a § 1983 claim alleging DVI Tracy employees Correctional Officer ("C/O") Mayes, C/O Huesel, C/O Braga, C/O Loiler, C/O Franco, C/O Cardoza, C/O Mendoza, C/O Rodriguez, Physician Assistant ("P/A") Street, Sergeant ("Sgt.") Hughes, Lieutenant ("Lt.") Ruiz, and Warden Moore (collectively, "Defendants") acted with deliberate indifference to his medical needs, health, and safety. Plaintiff alleges that Defendants acted with deliberate indifference when they: (1) denied him a cane; (2) denied Plaintiff housing on the first tier; (3) denied Plaintiff medical treatment and medication; and (4) ignored the prison's "hands on policy." Additionally, Plaintiff alleges that Defendants violated the American with Disabilities Act (the "ADA").

On October 12, 2007, Plaintiff was determined to be an American with Disabilities for existing leg injuries. As of October 25, 2007, doctors at DVI Tracy also established that Plaintiff was disabled. Nevertheless, Plaintiff was ordered to move to the second tier of the prison despite the fact that most disabled prisoners were housed on the first tier. Although Plaintiff explained to C/O Mayes and C/O Huesel that he was disabled, they proceeded to move him to the second tier per the orders of a Sergeant.

Plaintiff was required to walk up the stairs with all his belongings to his new lodging on the second tier. Some staff stood by as Plaintiff walked his belongings up the stairs, although no one physically escorted him.

On November 13, 2007, Dr. Oandasan ordered that Plaintiff be given a cane and for Plaintiff to be housed on the lower tier as is customary for prisoners with disabilities. On November 16, 2007, Plaintiff asked P/A Street for a cane. On that same day, P/A Street denied his request and told Plaintiff he was not disabled.

On November 19, 2007, C/O Braga put mechanical restraints on Plaintiff and ordered him to go up the stairs with no escort. Following C/O Braga's orders, Plaintiff proceeded up the stairs when his right leg went out and Plaintiff fell down seven steps. When C/O Braga was informed of Plaintiff's fall, she went to check on him. C/O Braga knew about Plaintiff's injuries because she escorted Plaintiff in the past. Because Plaintiff could not feel his legs, C/O Braga called a nurse over to check on him. The nurse determined that a gurney would be needed to transport Plaintiff to the infirmary for further examination. Plaintiff remained without medical treatment and in his restraints for approximately four hours after his fall under the supervision of C/O Cardoza. C/O Franco later relieved C/O Cardoza.

C/O Franco eventually transported Plaintiff in a wheelchair against Plaintiff's wishes, causing him severe back pain. While in the wheelchair, Plaintiff asked C/O Franco for a cane and requested to be moved to the first tier. C/O Franco asked C/O Loiler if Plaintiff could have a cane and be moved, and C/O Loiler denied both of Plaintiff's request. C/O Franco returned Plaintiff to his cell on the second tier. Due to Plaintiff's fall, he placed sick call forms to see doctors for his injuries. Although he had appointments on November 27, 2007, December 6, 2007, December 9, 2007, and December 11, 2007, each time he could not receive treatment because his file was unavailable.

On November 20, 2007, Dr. Oandasan told Plaintiff he signed papers authorizing him to move to the first tier and to be given a cane. On that same day, Plaintiff asked C/O Castro and Sgt. Hughes for a cane. Sgt. Hughes told Plaintiff that he would look into the matter.

On November 21, 2007, Plaintiff asked Lt. Ruiz for a cane. In the same conversation, Lt. Ruiz asked Plaintiff why he was not housed on the first tier like the other disabled prisoners. Plaintiff said he did not know and Lt. Ruiz said she would look into the matter. Plaintiff did not receive a cane until December 22, 2007.

On November 23, 2007, Dr. Nguyen examined Plaintiff for blood in his rectum. Dr. Nguyen determined that Plaintiff needed to be transferred back to the first tier. Plaintiff moved that same day.

On December 12, 2007, Plaintiff visited P/A Street about his lower back pain. P/A Street refused to examine Plaintiff or give him medication. Again on December 27, 2007, P/A Street refused to examine Plaintiff's lower back or provide him with medication for the pain. Consequently, Plaintiff filed an appeal against P/A Street. On December 29, 2007, Dr. Duggar gave Plaintiff his medication that P/A Street previously denied him. On January 4, 2008, Plaintiff sent a letter to Warden Moore explaining his medical needs.

On January 8, 2008, Plaintiff's back went out at approximately 9 a.m. C/O Mendoza and C/O Mayes refused to take Plaintiff to the infirmary because there was no gurney available. Plaintiff's cell mate filled out an inmate request form to have Plaintiff taken to the infirmary. Plaintiff was taken to the infirmary at 4:30 p.m. and was administered medication at 7:30 p.m.

On April 14, 2008, Plaintiff filed a complaint. (Doc. # 1.) On May 8, 2008, Magistrate Judge Gregory G. Hollows granted Plaintiff's motion to proceed in forma pauperis and denied Plaintiff's motion for appointment of counsel (together the "IFP Order"). (Doc. # 6.) In the IFP Order, the Court dismissed all

5

of Plaintiff's claims except those against Mayes, Huesel, Street, Loiler, Hughes, Ruiz, Franklin, Cardoza, and Mendoza.  (IFP Order at 12.)  In light of Plaintiff's pro se status, the Court granted Plaintiff leave to amend.  (Id. at 11.)  By May 16, 2008, Plaintiff was transferred to California State Prison at Corcoran, his present facility of incarceration.  (Doc. # 8.)

On May 23, 2008, Plaintiff amended his complaint and once again filed a motion requesting appointment of counsel.  (Doc. ## 11 and 9, respectively.)  On May 30, 2008, Plaintiff filed a second amended complaint and a motion for appointment of counsel (together, the "Second Amended Complaint").  (Doc. ## 15 and 14, respectively.)  On July 23, 2008, Magistrate Judge Gregory G. Hollows dismissed without prejudice Plaintiff's Second Amended Complaint because Plaintiff did not clearly identify Defendants and denied Plaintiff's motion for appointment of counsel ("July 23, 2008 Order").  (July 23, 2008 Order at 1.)

On August 18, 2008, Plaintiff again amended his complaint and made a motion for appointment of counsel (together, the "Third Amended Complaint").  (Doc. ## 21 and 22, respectively.)  On October 3, 2008, Magistrate Judge Gregory G. Hollows dismissed without prejudice Plaintiff's Third Amended Complaint because Plaintiff sought injunctive and declaratory relief and denied Plaintiff's motion for appointment of counsel ("October 3, 2008 Order").  (October 3, 2008

Order at 1.)  Plaintiff's claims for injunctive relief were deemed moot because Plaintiff had been transferred from the DVI Tracy to the California State Prison at Corcoran.  (Id. at 2.)  On October 22, 2008, Plaintiff amended his complaint and made a motion for appointment of counsel (together, the "Fourth Amended Complaint").  (Doc. ## 28 and 29, respectively.)  On March 2, 2009, Plaintiff made an additional request for appointment of counsel.  (Doc. # 34.)

## STANDARD OF REVIEW

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if a plaintiff raises claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).  If the court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action.  See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

The court should not, however, advise the litigant how to cure the defects.  This type of advice "would undermine district judges' role as impartial

decisionmakers." Pliler v. Ford, 542 U.S. 225, 231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform the litigant of deficiencies).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (citation omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question. Hosp. Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976). The court must also construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

When a plaintiff appears pro se, as Plaintiff does in this action, the court has an obligation to construe the plaintiff's complaint liberally. See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (same). Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988). "A pro se litigant must

8

be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superceded by statute, Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff claims Warden Moore, C/O Mayes, C/O Huesel, C/O Loiler, C/O Franco, P/A Street, C/O Mendoza, Sgt. Hughes, Lt. Ruiz, C/O Braga, and C/O Cardoza violated the ADA and acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

I.      ADA Claim

Title II of the ADA applies to inmates in state prison. Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997). In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;"

9

(3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), cert. denied, 538 U.S. 921 (2003).

Although Plaintiff does establish that he is an individual with a disability, Plaintiff does not allege that he was excluded from a program because of his disability nor does he specifically allege who violated the ADA. Accordingly, Plaintiff's ADA claims are DISMISSED with leave to amend.[1]

II.    Deliberate Indifference Claim

To maintain a deliberate indifference claim, a prisoner must show persons acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To act with deliberate indifference, a prison official must know of and disregard an excessive risk to inmate health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists

---

[1] If this Court construes Plaintiff's claim to allege that he was improperly excluded from the first tier, his claim also must fail. Plaintiff has failed to show that he was denied this benefit based on his disability and has not alleged who was responsible for this denial.

and he must also draw the inference. Id. Furthermore, Plaintiff must demonstrate that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGukin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Besides showing the "unnecessary and wanton infliction of pain," plaintiffs must show (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. Jett v. Penner, 439 F. 3d 1091, 1096 (9th Cir. 2006) (citing Estelle, 429 U.S. at 104). The harm need not be substantial, although "such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Id. (citing Estelle, 429 U.S. at 104).

    A.    Denying Plaintiff a Cane

        1.    P/A Street, C/O Hughes, Lt. Ruiz, and C/O Loiler

This Court previously established that Plaintiff states a cognizable deliberate indifference claim against P/A Street, C/O Hughes, Lt. Ruiz, and C/O Loiler for denying Plaintiff use of a cane. (IFP Order at 8.) As such, the Court will not revisit those issues here.

    2. <u>C/O Franco</u>

Although the Court established that Plaintiff states a cognizable claim against C/O Loiler, he fails to state a claim against C/O Franco. Plaintiff asked C/O Franco for a cane, prompting C/O Franco to ask C/O Loiler if Plaintiff could be given a cane. C/O Loiler denied Plaintiff's request. This evidence is not sufficient to establish that C/O Franco exhibited deliberate indifference to Plaintiff's request. C/O Loiler alone denied Plaintiff's request and, therefore, Plaintiff has only stated a cognizable claim against C/O Loiler. As such, Plaintiff's claim against C/O Franco is DISMISSED, with leave to amend.

  B. <u>Denying Plaintiff Housing on the First Tier</u>

    1. <u>C/O Mayes and C/O Huesel</u>

This Court previously established that Plaintiff states a cognizable deliberate indifference claim against C/O Mayes and C/O Huesel for denying Plaintiff housing on the first tier. (IFP Order at 6.) As such, the Court will not revisit those issues here.

    2. <u>C/O Franco and C/O Loiler</u>

On November 19, 2007, Plaintiff asked C/O Franco if he could be moved to the first tier. C/O Loiler ordered C/O Franco not to move Plaintiff. As such, C/O Franco did not display deliberate indifference. Once again, C/O Loiler

alone denied Plaintiff's request and, therefore, Plaintiff states a cognizable claim against C/O Loiler. Plaintiff's claim against C/O Franco is DISMISSED, with leave to amend.

        3.     Lt. Ruiz and C/O Rodriguez

Plaintiff also asked Lt. Ruiz and C/O Rodriguez if he could be moved to the first tier, as is customary for inmates with disabilities. Both said they would look into the matter. This Court construes Plaintiff to allege that Lt. Ruiz and C/O Rodriguez knew of Plaintiff's injuries and ignored his request. Plaintiff, therefore, states cognizable claims against Lt. Ruiz and C/O Rodriguez.

    C.    Denying Medical Treatment

A mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1059-60. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. Id. at 1060. Generally, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's action in light of those needs, the more

13

likely it is that a plaintiff has established deliberate indifference on the part of the defendant." Id. at 1061.

        1.      C/O Franco, C/O Cardoza, C/O Mayes, and C/O Mendoza

This Court previously established that Plaintiff states a cognizable deliberate indifference claim against C/O Franco, C/O Cardoza, C/O Mayes, and C/O Mendoza for not transporting Plaintiff to medical after his falls.  (IFP Order at 7 and 10.)  As such, the Court will not disturb its previous findings.

        2.      P/A Street

Plaintiff alleges that on December 27, 2007, P/A Street refused to give Plaintiff medication for his lower back and knee pain and refused to examine him.  This Court construes Plaintiff's claim to state that P/A Street was aware of his injuries yet chose to not act.  Therefore, he states a cognizable claim against P/A Street.

        D.      Deliberate Indifference to "Hands On Policy"

Plaintiff claims that C/O Braga acted with deliberate indifference when he did not comply with the "hands on policy" by refusing to escort Plaintiff upstairs.  The Operations Manual for the Department of Corrections and Rehabilitation reads that "[t]he escorting staff members may hold on to the restraints of the inmate (depending on inmate's . . . history)" (emphasis added).

(Doc. # 29, attached to Mot. as Ex. A.)  The Court construes Plaintiff's claim to allege that he was not escorted at the time of his fall and that lack of assistance caused his fall.

In the first instance, the Court finds that C/O Braga was not required to physically guide Plaintiff, as Plaintiff alleges.  Although the "hands on policy" does permit staff to physically escort inmates, it does not mandate that prisoners must be physically escorted at all times.  Moreover, as worded, it appears that the policy reason for the "hands on policy" is not to prevent inmate injuries, but to maintain prison security.

C/O Braga, therefore, did not violate any prison policy.  As such, Plaintiff does not state a cognizable claim against C/O Braga and his claim against C/O Braga is DISMISSED, with leave to amend.

E.   Claims Against Warden Moore

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a defendant holds a supervisorial position, the casual link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of

official personnel in civil rights violations are not sufficient.  See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff alleges that he alerted Warden Moore of the violations taking place against him with a letter.  Plaintiff, however, has failed to state a casual link between Warden Moore's actions and the injuries he suffered.  Plaintiff merely informed Warden Moore that if Warden Moore did not do anything about the alleged constitutional violations, Plaintiff would file suit.  Plaintiff has not made anything more than vague and conclusory allegations against Warden Moore, therefore, his claims are DISMISSED with leave to amend.

      F.      Claim Against the California Department of Rehabilitation

To state a claim under § 1983, a plaintiff must sue a "person" who, acting under color of state law, violated the plaintiff's constitutional rights.  42 U.S.C. § 1983 (1996).  A "person," for purposes of § 1983, includes officials or officers who directly violated or caused a violation of a plaintiff's constitutional rights.  Id.  Further, Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties in the action.  That is, a plaintiff must sue the "persons" responsible, not a county or city jail.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In addition to individual officers, a municipality is also a "person" for purposes of § 1983.  See Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163, 166 (1993); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  To state a claim against a municipality under § 1983, a plaintiff must allege facts to support a violation of his constitutional rights pursuant to a policy or custom of the municipality.  Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing Monell, 436 U.S. at 690-91; Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989)).  A plaintiff cannot therefore state a § 1983 claim against a municipal defendant unless he alleges that the municipal defendant maintained a policy or custom pertinent to the plaintiff's alleged injury and explains how such policy or custom caused his injury.  Sadoski v. Mosley, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

This Court construes Plaintiff's claim to allege that the California Department of Rehabilitation was responsible for his well being and did not take the necessary steps to prevent his injuries.  Plaintiff, however, must allege that the violation of his rights was pursuant to a custom or policy of the department, or allege facts from which such a custom or policy can be inferred to hold the California Department of Corrections liable under § 1983.  See Shaw v. Cal. Dep't

17

of Alcoholic Beverage Control, 788 F.2d 600, 610-11 (9th Cir. 1986). He has not done so and, therefore, the claims against the California Department of Rehabilitation are DISMISSED with leave to amend.[2]

III.   Plaintiff's Motions for Appointment of Counsel

Also currently before this Court are two motions for appointment of counsel filed by Plaintiff on October 22, 2008, and March 2, 2009. (Doc. ## 29 & 34.) Plaintiff has similarly requested the appointment of counsel on five prior occasions. (Doc. ## 3, 9, 14, 18, & 22.) All of his previous motions were denied. (Doc. ## 6, 17, 19 & 24.)

There is no right to counsel in a civil case, although 28 U.S.C. § 1915(d) authorizes courts to appoint counsel to represent indigent prisoners. Lassiter v. Dep't of Soc. Servs. of Durham County, North Carolina, 452 U.S. 18, 26 (1981). Appointment of counsel, however, remains discretionary and courts may only appoint counsel under exceptional circumstances. Wilborn v. Escalderon, 789 F.2d 1328, 1330-31 (9th Cir. 1986) ("A finding of exceptional circumstances requires an evaluation of both "the likelihood of success on the

---

[2] If this Court construes Plaintiff's claim to challenge the California State Department of Rehabilitation's practice of not requiring C/Os to escort restrained inmates, then his claim likewise must fail because at no time does Plaintiff allege how a lack of escort caused his fall and subsequent injury.

merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved" (citing <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983)).

Previously, the Court did not find exceptional circumstances, and denied Plaintiff's requests. The Court once again finds Plaintiff's circumstances have not changed sufficiently to warrant appointment. As such, Plaintiff's request for appointment of counsel is DENIED.

<u>CONCLUSION</u>

IT IS HEREBY ORDERED that:

(1) Bejaran's complaint is DISMISSED in part. <u>See</u> 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1). Specifically, all ADA claims, deliberate indifference against C/O Franco for denying use of a cane, deliberate indifference against C/O Franco for denying housing on the first tier, deliberate indifference against C/O Braga as to the "hands on policy," and all claims against Warden Moore, are dismissed with leave to amend. Plaintiff's claims that were deemed sufficient to proceed were: deliberate indifference against P/A Street, Sgt. Hughes, Lt. Ruiz, and C/O Loiler for denying use of a cane; deliberate indifference against C/O Mayes, C/O Huesel, C/O Loiler, Lt. Ruiz, and C/O Rodriguez for denying

housing on the first tier; and deliberate indifference against C/O Franco, C/O Cardoza, C/O Mayes, C/O Mendoza, and P/A Street for denying medical treatment.

(2) Bejaran is GRANTED thirty (30) days leave, as calculated from the date this Order is filed, in which to file an amended complaint that cures the deficiencies noted above. The amended complaint must be complete in itself without reference to the superseded pleading. See Local Rules of the Eastern District of California, LR 15-220. Defendants not named and any claims not re-alleged in the amended complaint will be deemed to have been waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

DATED: Honolulu, Hawaii, July 28, 2009.



_____
David Alan Ezra
United States District Judge

Bejaran v. California Department of Corrections Rehabilitation, et al., No. CIV. S-08-00817 DAE; Order Dismissing Complaint Pursuant To 28 U.S.C. § 1915