IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESSE E. BEJARAN, #F-81663 | ) | CIV. NO. 2:08-00817 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIAN K. LUETH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On May 24, 2010, Defendants filed the instant Motion to Dismiss. After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** Defendants' Motion.  (Doc. # 54.)

BACKGROUND

The Court has recounted the facts of this case extensively in prior Orders.  (Docs. ## 42, 52.)  Jesse E. Bejaran, ("Plaintiff") was a prisoner at the Deuel Vocational Institution ("DVI"), under the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the time the original Complaint was filed on April 14, 2008.  (Doc. # 1; Doc. # 39 at 11.)  On August 14, 2009, Plaintiff filed his Fifth Amended Complaint while incarcerated at Corcoran State Prison ("Corcoran").  (Doc. # 39 at 11.)  In an order filed on

December 8, 2009, the Court screened the complaint, construing it liberally, and
allowed certain deliberate indifference claims against Lt. Ruiz, Lt. Rodriguez, P/A
Street, C/O Hughes, C/O Mayes, C/O Huesel, C/O Loiler, C/O Franco, C/O
Cardoza, C/O Mendoza, and C/O Braga (collectively "Defendants") for varying
incidents.  (Doc. # 42 at 17.)  The four claims, all from Plaintiff's incarceration at
DVI, consist of: (1) denied use of a cane; (2) denied housing on the first tier; (3)
denial of medical treatment and medication after his fall down the stairs; and (4)
lack of adherence to the CDCR's inmate escort policy.  (Id. at 2.)  The Court
dismissed the claims against Warden Moore, CDCR, and those under the ADA.
(Id. at 17.)

On May 24, 2010, Defendants filed the instant motion to dismiss due
to failure to exhaust administrative remedies.  (Doc. # 54 at 2.)  Defendants'
exhibits attached to the motion include Plaintiff's Reasonable Modification or
Accommodation Request, submitted September 16, 2007, which was spilt into two
issues–(1) cane and medication request (#07-02571) and (2) access to ADA
programs and request for extended stay privileges (#07-02572).  (Doc. # 54 Ex. A-
B.)  Both were denied in Director's Level Appeal Decisions on November 29,
2007, for the first issue and December 28, 2007, for the second issue.  (Id.)  An
additional Reasonable Modification or Accommodation Request (#07-03491) was

submitted on December 20, 2007, but only led to a partially granted Second Level

Response, dated February 14, 2008.  (Doc. # 54 Ex. D.)  This grievance consisted

of a request for a medication change.  A listing of all of Plaintiff's Appeals and the

decisions at DVI is also included with the motion.  (Doc. # 54 Ex. C.)

        Plaintiff filed a Response to the Motion to Dismiss on July 9, 2010.

(Doc. # 59.)  Plaintiff included new information about an informal level appeal,

which was granted on February 25, 2008.  (Doc. # 59 Ex. C.)  Plaintiff's exhibits

also contain appeals, medical history, and history of his appeals while at Corcoran

State Prison.  (Doc. # 59 Ex. A, D, E, F, G, H, I.)  On July 16, 2010, Defendants

filed a Reply to Plaintiff's Opposition to the Motion to Dismiss. (Doc. #62).

DISCUSSION

        Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not

bring action under 42 U.S.C. § 1983 "until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA was adopted to

address problems that were plaguing the courts by: (1) curbing frivolous claims;

(2) reducing the number of suits while increasing quality; (3) allowing the agency

to handle the suits internally, possibly eliminating the need for a lawsuit; and (4)

developing an administrative record if a lawsuit is eventually filed.  Porter v.

Nussle, 534 U.S. 516, 516-17 (2002).  The policy "[requires] dismissal without

prejudice when there is no presuit exhaustion [as it] provides a strong incentive that will further these Congressional objectives; permitting exhaustion pendente lite will inevitably undermine attainment of them." McKinney v. Carey, 311 F.3d 1198, 1200-1201 (9th Cir. 2002).

The PLRA functions as a defense, and the "defendants have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Andrews v. King, 398 F.3d 1113, 1119 (9th Cir. 2005). Because it is an affirmative defense, "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Not only must administrative remedies be exhausted by the Plaintiff, "proper exhaustion of administrative remedies is necessary." Woodford v. Ngo, 548 U.S. 81, 83 (2006) (emphasis added). Simply, a "[prisoner] need comply only with the prison's own grievance procedures to properly exhaust under the PLRA." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Jones v. Bock, 549 U.S. 199, 218 (2007)).

The Court has wider discretion in regards to a motion to dismiss for failure to exhaust administrative remedies, as "[c]ourts considering 'nonenumerated' Rule 12(b) motions on the issue of administrative exhaustion may

4

not only rely on matters outside the pleadings but also have broad discretion to resolve any factual disputes."  Irvin v. Zamora, 161 F. Supp. 2d 1125, 1128 (S.D. Cal. 2001) (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)); see also Jensen v. Knowles, 621 F. Supp. 2d 921, 925 (E.D. Cal. 2008); Wyatt, 315 F.3d at 1119-20.

Plaintiff was required under the PLRA to adhere to the grievance procedures followed by his prison, DVI, and moreover, the CDCR, before filing a lawsuit.  In California, a four-tiered system governs grievances filed by prisoners. Cal. Code Regs. tit. 15, § 3084.5.  The prisoner will go through the informal level, first formal level, second formal level, and third formal level, in order to exhaust his or her administrative remedies.  Id.  The informal level essentially notes the complaint, that a staff member has been notified of the prisoner's complaint and the staff member's response.  This must be completed within ten working days.  Id. § 3084.6.  If the prisoner is not satisfied, it will proceed to the formal levels.  First, the complaint is submitted to the appeals coordinator for review.  The second review is done by the head of the institution and finally, the process is exhausted when it is submitted to the Director of the CDCR.  Id.; see also Woodford, 548 U.S. at 85-86; Brown v. Valoff, 422 F.3d 926, 929 (9th Cir. 2005) ("California's Department of Corrections provides a four-step grievance process for prisoners

5

who seek review of an administrative decision or perceived mistreatment"); <u>Irvin</u>,

161 F. Supp. 2d at 1129 ("the Director's Level Decision shall be final and exhausts

all administrative remedies available").

The PLRA administrative requirement should not be viewed as so

rigorous that it bars prisoner appeals from the court:,

> [T]he grievance system in California does not require a prisoner to
> expressly name the defendants.  <u>See</u> Cal.Code Regs. tit. 15, § 3084.5
> (requiring only that the prisoner describe the problem and action
> requested).  This is likely so because the administrative grievance
> system is less about future litigation and more about reaching an
> internal and speedy resolution of the prisoner's problem.

<u>Jensen v. Knowles</u>, 621 F. Supp. 2d 921, 928 (E.D. Cal. 2008) (citations omitted).

Nor does a plaintiff need to make a grievance as detailed as a lawsuit complaint.  A

plaintiff's

> failure to grieve deliberate indifference does not invalidate his
> exhaustion attempt.  A grievance need not include legal terminology
> or legal theories unless they are in some way needed to provide notice
> of the harm being grieved.  A grievance also need not contain every
> fact necessary to prove each element of an eventual legal claim.  The
> primary purpose of a grievance is to alert the prison to a problem and
> facilitate its resolution, not to lay groundwork for litigation.

 <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009).  However, a plaintiff will

not be successful in proceeding with a lawsuit if his or her grievance "did not alert

the prison to the nature of his problem."  <u>Id.</u> at 1121.  <u>See</u> <u>Morton v. Hall</u>, 599 F.3d

942, 946 (9th Cir. 2010).

The Court concludes that Defendants have demonstrated that Plaintiff did not exhaust the administrative procedures by going through all four tiers required, and indeed in most cases did not even alert the prison to the same concerns as are raised in Plaintiff's complaint before this Court.  The four issues raised by Plaintiff in this action include: (1) staff members denied use of a cane; (2) staff members denied him transportation to medical aid after his fall and subsequent denial of medication by one staff member; (3) staff acted in a way that denied Plaintiff an escort as per CDCR policy; and (4) staff members denied him lower tier housing.  The Court evaluates each in turn.

I.      Denial of Cane

Plaintiff alleges that his requests for a cane were denied by different staff members on two dates, November 19, 2007, and November 20, 2007.  (Fifth Am. Compl. ¶¶ 9, 10.)  There was an earlier appeal (#07-2571), filed on September 16, 2007, which was split into two claims, only one of which involved a cane.  The November 19, 2007 and November 20, 2007 instances all occurred a month after the September 16, 2007 appeal was filed.  It is therefore not possible that the September 16, 2007 appeal constitutes exhaustion of a claim that arose one month later.  There is no further evidence in the record that Plaintiff appealed the

November 2007 denials.  Plaintiff's November 2007 grievances are clearly not exhausted.

II.      Medical Assistance Denied after Fall

          Plaintiff also claims that he was not transported to the medical center after his fall, given medication or an examination.  (Fifth Am. Compl. ¶ 13.) However, the Director's Level Review for appeal #07-02571 states that Plaintiff's request in regards to medication for injuries from <u>gunshot wounds</u> was already granted.  The discrepancy is clear in this case.  There is no lawsuit about injuries due to a gunshot wound before the Court.  The medical center claim purportedly arises from a fall, not a gunshot wound.  It is clear that any administrative review was for pains resulting from prior gunshot wounds and not from a fall down the stairs at DVI.

          A separate Second Level Response, #07-03471 filed at DVI on February 14, 2008, addressed a medication change due to pain from a fall.  (Pl. Resp. Ex. E.)  Although this does address a fall down the stairs, it does <u>not</u> address denial of medication or medical attention by staff members.  The administrative complaint was simply a request for a different type of medication, to which the doctors, in their professional discretion, declined to consent.  The process was also

not fully exhausted.  Defendants have therefore demonstrated that Plaintiff's claim

for denial of medical assistance after a fall was not exhausted.

III.    <u>Inmate Escort Policy</u>

With respect to C/O Braga's non-compliance with the inmate escort

policy, this subject was never broached in any of Plaintiff's appeals at DVI.  This

incident occurred on November 19, 2007, and Plaintiff's informal appeal was

granted on February 25, 2008.  (Fifth Am. Compl. Ex. 5.)  However, this appeal

stated that Plaintiff "fell because [he was] unable to walk on [his] own power."

(<u>Id.</u>)  Plaintiff only requested an incident report to be made and for a copy of that

report.  Consequently, a CDCR 128B report was authored by C/O Braga.  This

appeal does not mention that the fall was allegedly due to C/O Braga not following

the inmate escort policy nor does it complain of the staff member's actions.  It only

requests that a report be made, and Plaintiff appealed this issue no further.  Plaintiff

needed to state in his grievance that a staff member had violated the inmate escort

policy, rather than a violation of the policy requiring a report.  This appeal never

put the defendants on notice to Plaintiff's escort-policy claim.

IV.    <u>Lower Tier Denial</u>

Plaintiff claims that five staff members denied him housing on the

first tier, all on or close to November 21, 2007.  (<u>Id.</u> ¶ 11.)  Appeal #07-0342

9

largely addressed Plaintiff's request to receive his ADA benefits in general (the services, programs, or activities of the CDCR).  In particular, Plaintiff stated his request to have an extended stay privilege, which was not granted because he was not found to be mobility impaired.  The grievance did not address Plaintiffs' complaint regarding first tier housing and any denial by staff members.

The foregoing demonstrates that Plaintiff did not put the prison officials on notice regarding the staff conduct complained about in this lawsuit. Instead, the appeals in the administrative record are focused solely on obtaining unrelated medical services and having Plaintiff's health issues documented in prison files.

The record indicates that Plaintiff is familiar with the administrative appeals process, has used it, and had the opportunity to use it for the claims herein, but did not do so.  As Plaintiff has done consistently throughout this action, Plaintiff is confusing time lines and conflating unrelated actions in an attempt to demonstrate administrative exhaustion.

Accordingly, Defendants' motion to dismiss is GRANTED.

10

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss.  Plaintiff's Fifth Amended Complaint is hereby dismissed with prejudice.  The Court has allowed Plaintiff to file five amended complaints and Plaintiff has had ample opportunity to cure the defects in his action.  The Court concludes that further amendments would be futile.  The Clerk of the Court is hereby directed to enter judgment in favor of all Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 23, 2010.



_____
David Alan Ezra
United States District Judge

<u>Bejaran v. Lueth et al.</u>, CV No. 2:08-00817 DAE; ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS

11